IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NADER AFGAN, *et al.*,                          )
                                                )
            Plaintiffs,                         )
                                                )
v.                                              )      Civil Action No. 1:25-cv-02452 (AJT/LRV)
                                                )
MARCO G, LLC, *et al.*,                         )
                                                )
            Defendants.                         )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Nader Afgan and Shanar Nasserifar bring claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO;" 18 U.S.C. §§ 1961 *et. seq.*) Count I), and state law claims for fraud, and related causes of action (Counts II-X) against Defendant Marco G, LLC (the "Business Defendant") and the remaining defendants (the "Individual Defendants"), all arising out of an alleged fraudulent scheme in which Defendants provided deficient and unlicensed architectural and renovation services, leading to severe defects in Plaintiffs' home. Before the Court is Defendants' Motion to Dismiss, [Doc. No. 10] (the "Motion"). The Court held a hearing on the Motion on March 9, 2026, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, and the argument of counsel at the hearing, the Motion is **GRANTED** as to the RICO claim (Count I) and the Court will not exercise any supplemental jurisdiction over the remaining state law claims (Counts II-X), which are hereby dismissed without prejudice.

**I. BACKGROUND**

The Complaint alleges that the Defendants provided unlicensed services to Plaintiffs while failing to disclose their lack of credentials and qualifications. *Id*. ¶¶ 4, 5, 13. More broadly, the

1

Plaintiffs allege that the individual defendants fraudulently operated the Business Defendant, Marco G, LLC, a purported architectural firm, which marketed itself through numerous website, social media, and other materials as an international architectural design firm that employed qualified architects and had a strong portfolio of residential and commercial projects in the Washington, D.C., Maryland, and Virginia region, when, in fact, that entity and its affiliates were not registered as a professional architectural entity, had no licensure history with the Virginia Department of Professional and Occupational Regulation, and did not secure insurance coverage for the Plaintiffs' construction project. *Id.* ¶¶ 5(a), 14, 38. More specifically, the Business Defendant functioned as the alter ego of Defendant Marco Goncalves ("Goncalves"), who represented himself to the public as the "Senior Architect" and CEO, with a history of providing similar services to, *inter alia*, the armed forces of Brazil and had used various other business entities to obscure his operations and evade liability. *Id*. ¶¶ 25, 37-39.

Plaintiffs first encountered Marco Goncalves in late 2023 when visiting a friend's residence in Alexandria, Virginia, which the Defendants had purportedly remodeled; the friend introduced Marco Goncalves as their architect, and Plaintiffs were so impressed by the work that they retained him to design a renovation of a home they had purchased (also in late 2023). *Id*. ¶¶ 10-12. On February 12, 2024, Goncalves sent Plaintiffs an email containing a design proposal describing the services as "architectural drawings." *Id*. ¶ 16. In February 2024, the parties executed a design services agreement for architectural services for a renovation of their kitchen and living room, which required the delivery of architectural drawings, construction documents, and provided for permit acquisition services "if needed;" it did not include construction services. *Id*. ¶ 20.

The Complaint alleges that Marco Goncalves later persuaded Plaintiffs to expand the renovation to a full-house project including multiple levels and exterior elements, and that

2

Defendants provided cost estimates totaling hundreds of thousands of dollars for the expanded project. *Id*. ¶¶ 23-24. Plaintiffs ultimately paid Defendants between $750,000 and $800,000 for materials and contractor labor associated with the renovation project. *Id*. Renovation work began in March 2024 with an anticipated completion date later that year, but Plaintiffs allege that Defendants failed to obtain required permits for the renovation work and employed unqualified contractors to perform structural, electrical, and plumbing work. *Id*. ¶¶ 27-31.

In or around December 2024, Plaintiffs moved into the home but discovered numerous defects and safety hazards including structural failures, exposed and mis-routed electrical wires, plumbing problems, and damaged construction finishes–such that the entire renovation was a failure and required extensive reconstruction. *Id*. ¶ 30. An expert inspection later concluded that the installation environment was not properly controlled. *Id*. ¶¶ 35-36. The Complaint alleges that Plaintiff Nader Afgan was electrocuted by an exposed electrical wire, and that the deficient plumbing systems had to be replaced and caused flooding damage. *Id*. ¶¶ 30-36. Plaintiffs also allege that they suffered financial losses in excess of one million dollars, and that the events caused emotional distress and significant disruption to their family. *Id*. ¶¶ 41-42.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand

[a motion to dismiss]." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517 (2014) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). The Court must accept all well-pled facts in the complaint as true and construe all facts in the light most favorable to Plaintiffs. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

### III. DISCUSSION

1. **Plaintiffs Fail to Plead the Existence of a RICO Enterprise as Required to State a Civil RICO Claim (Count I)**

Plaintiffs' first cause of action (Count I) (and their sole basis for original federal subject matter jurisdiction) is that Defendants' fraudulent scheme of providing architectural and construction services without the required registration and licensure violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et. seq*.

In pertinent part, the RICO statute makes it " unlawful for any person  employed by or associated with  any enterprise … to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…," 18 U.S.C. § 1962(c), and "[a]ny person injured in his business or property by reason of a violation of section 1962… may sue therefor… and shall recover threefold the damages he sustained sustains and the cost of the suit, including reasonable attorney's fee…." *Id* § 1964((c).  Accordingly, to impose RICO liability on any of the Defendants, Plaintiffs must allege as to that Defendant that he or she (1) conducted or participated, directly or indirectly, in the affairs of (2) an Enterprise through (3) a pattern of racketeering activity, and show that (5 ) they were injured in their business or property (6) by reason of the RICO violation. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003).

A RICO enterprise is defined as an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  *See Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d

142, 148 (4th Cir. 1997) (a RICO enterprise is "an ongoing organization, formal or informal, in which the various associates function as a continuing unit") (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Based on that definition, courts have concluded that the RICO enterprise must be distinct from the individual(s) liable under the Act because of their conducting the affairs of the Enterprise through a pattern of predicate acts. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (a RICO plaintiff "must allege and prove the existence of two distinct entities: a person; and an enterprise that is not simply the same person referred to by a different name") (cleaned up); *see also Oriole Group, LLC v. Pool Scouts Franchising, LLC*, 791 F. Supp. 3d 661, 683 (E.D. Va. 2025).  Courts have also concluded that liability under the Act "depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (cleaned up); *see also Boyle v. United States*, 556 U.S. 938, 947 ("the existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other.").

Here, the Complaint fails to allege that the alleged Enterprise is distinct from the people or entities unlawfully conducting the affairs of the Enterprise. In this regard, the alleged Enterprise, operating under the fictitious name "Marco G Architects" ([Compl.] ¶¶ 13-14), consists of all of the Defendants, i.e, the Business Defendant and the Individual Defendants as its members and/or employees. *Id.* ¶ 5.  In short, the Complaint alleges an Enterprise that consists of the same persons and entities that Plaintiffs contend violated the RICO statute and therefore fails to allege an Enterprise that is distinct from the Defendants.

The Complaint also fails to adequately allege that the affairs of the RICO enterprise are distinct from the alleged pattern of racketeering that Defendants engaged in, as required to state a civil RICO claim. In that regard, the Complaint alleges with respect to the Enterprise that:

1. The Enterprise consistently operates under the fictious name "Marco G. Architects" and "'Marco G. Architects' exists only as a façade to further the Enterprise's criminally fraudulent scheme." [Compl.] ¶¶ 14,19.

2. "The Enterprise operated through coordinated family member roles with Defendant Marluce Maria Goncalves handling marketing and legal matters that promoted Defendant Marco Goncalves' false credentials as an Architect, Defendant Marcelo Batista Goncalves managed financial operations that supported the fraudulent billing, and Defendant Marcia M. Rocha expanded service offerings to enhance apparent legitimacy," *Id*. ¶ 44, while Marco G, LLC "serves as the business vehicle and primary payment collection entity for the Enterprise" *Id*. ¶ 5(a).

3. "The Enterprise maintains ongoing operations across Virginia, Maryland, and Washington, D.C., with its website and social media accounts remaining active as of [the filing of the Complaint], continuing to promote false architectural credentials to potential clients.'" *Id*. ¶ 45.

4. "The Enterprise's systematic misrepresentation spans from the 2018 business formation through present day, demonstrating both closed-ended continuity through extended duration and open-ended continuity through on-going operations threatening future violations." *Id*. ¶ 45.

5. The Enterprise's fraudulent scheme" extends beyond Plaintiffs, evidenced by the Enterprise's website claims …., suggesting a pattern of misrepresenting architectural credentials to multiple clients over an extended period." *Id*. ¶ 46.

As for the Defendants' pattern of racketeering activity, the Complaint alleges:

6

1. "According to the Enterprise's website, Defendants 'joined his partners in 2018' when Marco [Goncalves] founded that the current iteration of the business, demonstrating coordinated timing and unified purpose in establishing the fraudulent scheme." *Id.* ¶ 6.

2. Defendants were responsible for overseeing the Enterprise's website, through which they promoted through misrepresentations, the experience and credentials of Marco G Architects. *Id.* ¶¶ 13-15.

3. "Defendants, acting individually and as a common enterprise, made numerous false representations of material fact to Plaintiffs." *Id.* ¶ 51.

As reflected above, the Complaint alleges that the Defendants, which collectively constitute the Enterprise, "founded the current iteration of the business" and "act[ed] …as a common enterprise" and are alleged, in substance to have conducted or participated in "the affairs" of the Enterprise  through a "pattern of racketeering activity" that is the same as the "affairs' of the Enterprise. As a result, the Complaint fails to allege that the purpose and affairs of the Enterprise are distinct from the pattern of racketeering activity engaged in by the Defendants. *See Rojas v. Delta Airlines, Inc.,* 425 F. Supp. 3d 524, 538 (D. Md. 2019) (airline customers failed to allege enterprise distinct from pattern of racketeering activity based on claims that defendant airlines agreed to improperly charge certain taxes on Plaintiffs' airfare).

Accordingly, the facts alleged in the Complaint do not plausibly satisfy the requirements that a RICO enterprise be distinct from both the Defendants and from the pattern of racketeering activity they engaged in. The Plaintiffs having failed to allege a valid RICO "enterprise," Count I must be dismissed.

2. **The Court Lacks Jurisdiction as to Plaintiffs' Remaining Claims (Counts II-X)**

The Court has original federal question jurisdiction over this action solely based on Plaintiffs' RICO claim, with jurisdiction over the remaining state law claims solely through supplemental jurisdiction under 28 U.S.C § 1367, were the Court to exercise that jurisdiction. [Compl.] ¶ 46. In that regard, the Court may decline to exercise supplemental jurisdiction over a state law claim, where all claims over which it does have original jurisdiction are dismissed. 28 U.S.C § 1367(c)(3). Here, the Court has dismissed the only claim over which it has original jurisdiction, Plaintiffs' RICO claim, and given that all remaining state law claims are governed exclusively by state law, the Court will decline to adjudicate those claims under its supplemental jurisdiction. *See Croatia Line*, 918 F. Supp. 961, 969 (E.D. Va. 1996) ("A district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction").

## IV. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that the Motion be, and the same hereby is, **GRANTED** as to Count I (Plaintiffs' civil RICO claim) for failure to state a claim, and that claim is dismissed; Counts II-X are dismissed without prejudice pursuant to 28 U.S.C § 1367(c)(3) and this action is accordingly dismissed in its entirety.

The Clerk is directed to enter judgment as to Court I pursuant to Fed. R. Civ. P. 58. And forward copies of this order to all counsel of record, and to terminate the case.

_____
/s/
Anthony J. Trenga
Senior U.S. District Judge

May 5, 2026
Alexandria, Virginia

8